## Potter's Executor et al. v. Potter.

(Decided June 10, 1930.)

770

J. D. VIA for appellants.

L. L. HINDMAN for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

The appellee, Mrs. Victoria W. Potter, and her late husband, W. W. Potter, had a marriage contract. It was executed on February 19, 1912, the day of their marriage—the third matrimonial venture for the former and the second for the latter. Both parties were well advanced in years. They lived together as husband and wife until Mr. Potter's death in January, 1927.

The antenuptial agreement provided that neither party should have any interest in the property of the other. By his will, however, the husband devised a life estate to his wife in four acres of land, including their dwelling house. In due time she renounced the acceptance of the will, and successfully maintained this suit to set aside the marriage contract on the ground of fraudulent inducement and overreaching. Potter's adminstrator and heirs appeal.

The court properly sustained exceptions to the deposition of the widow (Gaines v. Gaines' Adm'r, 163 Ky. 260, 173 S. W. 774), and the remaining evidence is meager and unsatisfactory on both sides as to the circumstances surrounding the execution of the instrument. It is developed that Potter owned a half interest in 187 acres of land, which was worth about $2,500, and a life estate in the other half. It is not shown what personal property he had at the time, except an unsupported opinion that altogether he was worth $8,000 or $9,000, but the administrator's sale of personalty yielded only $1,560. Mrs. Potter had $180 in money, a bed, a couple of old trunks, and her clothing. She was dependent upon members of her family for support; could read and write only in a limited way, and was wholly ignorant of business

affairs. It appears the parties had not known one another very long—at least the courtship covered a period of only a few weeks.

J. A. Porter, then county clerk of Hickman county, testified that Mr. Potter asked him to go up to the Methodist parsonage and take an acknowledgment or witness the signatures of himself and his intended bride; that when he got there Mr. Potter took a paper from his pocket and the parties signed it; that, as he remembered, he asked her if she understood the conditions, or that he said something about reading the paper to her, and Potter said, "She understands it," and the paper was not read on that occasion. This was just before the marriage ceremony, performed at the parsonage.

The law regarding antenuptial contracts is pretty well established, although there may be difficulty in treating the facts of a particular case. With respect to the burden of proof, the rule puts it on the party relying on the contract to show it was fairly entered into, and, where it is apparently inequitable and unjust, the party assailing it is not usually required to produce the volume or degree of proof demanded for the overthrow of the ordinary written instrument. Gaines v. Gaines, supra, and cases therein cited; Stephens v. Stephens, 181 Ky. 480, 205 S. W. 573. It is the rule also that in such instances the prospective wife must have been apprised of the nature and extent of her prospective husband's estate and the value of her marital rights therein that she was surrendering by the instrument. Stratton v. Wilson, 170 Ky. 61, 185 S. W. 522, Ann. Cas. 1918B, 917.

Applying the foregoing rules to the facts of the case at bar, and giving proper consideration to the chancellor's decision, the judgment should be, and it is, affirmed.